ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
FREDERICK A. BATTISTA
Assistant U.S. Attorney
Maryland State Bar Member
Email: Fred.Battista@usdoj.gov
FRANK T. GALATI
Assistant U.S. Attorney
Arizona State Bar No. 003404
Email: Frank.Galati@usdoj.gov
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-17-00713-PHX-JJT (JZB) |
| Plaintiff, | **RESPONSE TO DEFENDANT JOHNSON'S MOTION IN LIMINE RE: HIS SALARY AND PERSONAL WEALTH** |
| v. | **[Doc. 139]** |
| Gary Leonard Pierce, et al., | |
| Defendants. | |

Defendant George Johnson has filed a Motion *in limine* that seeks to "exclude any evidence, testimony, or argument concerning Mr. Johnson's salary and compensation, *personal* net worth, or financial condition" and further claims that such evidence "has no probative value and would only serve to encourage a jury to find against Mr. Johnson based on his *personal* wealth."[1] (Motion at 1; emphasis added). As is demonstrated in the

---

[1] The motion clearly addresses defendant Johnson's personal wealth and financial condition. The United States' trial presentation may include evidence before the ACC during its consideration of the Johnson Utilities rate case and the income tax pass through issue may include some information about the financial condition of Johnson Utilities and other Johnson entities. Neither the motion nor this response addresses evidence related to those ACC proceedings.

following paragraphs, evidence that defendant Johnson is a man of some means is probative of central issues in this case. Moreover, the motion does nothing more than assume that the jury drawn for this trial will be prejudiced against a wealthy man. Accordingly, the motion should be denied.

## I. THE LAW

The United States begins its response by agreeing with the propositions of law cited at page 3 of defendant's motion. Defendant cites three cases. Two of them hold that appeals to class prejudice are highly improper and may be grounds for reversal.[2] The other says that evidence of a company's wealth, and argument about it, are improper when that wealth is not relevant to any issue in the case.[3] The holdings of these cases are unassailable; the suggestion that they are applicable to this case is perplexing. To be clear, there will be no appeals to class prejudice by the United States at trial of this matter. Defendant Johnson is not to be tried because he has a lot of money. He will be tried because of what he did, and was capable of doing, with some of that money.

## II. RELEVANCE

The Indictment alleges that defendant Johnson was the source of $31,500 funneled through a consulting firm established by the unindicted coconspirator (UCC) and then into the joint bank accounts of defendants Gary Pierce and Sherry Pierce. Indictment, ¶¶ 18, 31, 34, 38, 40, 42, 45, 47, 49, 54. Additionally, and more importantly to this motion, paragraph 35 of the Indictment alleges the following:

> 35. On or about December 27, 2011, defendant GARY LEONARD PIERCE sent an email to the unindicted coconspirator regarding the possible purchase of land valued at approximately $350,000 by defendants GARY LEONARD PIERCE and JAMES FRANKLIN

---

[2] *United States v. Socony-Vacuum Oil. Co.*, 301 U.S. 150, 239 (1940); *United States v. Bradley*, 644 F.3d 1213, 1271 (11th Cir. 2011).

[3] *United States ex rel. Miller v. Bill Harbert International Construction, Inc.*, 608 F 3d 871, 897 (D.C. Cir. 2010).

NORTON. In the email defendant GARY LEONARD PIERCE states, "Please pass on to Jim." **The funds for the purchase were to be provided by defendant GEORGE HARRY JOHNSON.** (Emphasis added.)

The UCC will testify that defendant Johnson was to pay the $350,000. The United States intends to offer emails regarding the proposed property transaction which defendant Gary Pierce sent to the UCC instead of directly to defendant Norton. In an email to the UCC pertaining to the transaction, dated December 27, 2011, defendant Gary Pierce expressed his enthusiasm for the property and laid out some of the details as follows:

> "Please pass onto Jim: . . . The price I have been told that the bank will accept is between $350,000 and $400,000. . . . This is a steal if it can be bought at $400,000. A starting offer of $300,000 would get their attention and let them know that it is not going to go much higher. . . . Need to move fast. . . ."

In a second email to the UCC, dated December 29, 2011, defendant Gary Pierce again expressed his enthusiasm for the property and laid out some additional details as follows:

> "Jim: See the Attached [LOI - Letter of Intent to Purchase]. We want to do this today, today or tomorrow. We will formalize this as to the name or LLC which it needs to be titled, before closing. Apparently, this property appraised for 1.2 million, in 2009 and 2 million in 2006. I don't think the bank will accept $300,000, but if they do, it is the best deal in town!! . . . I am going to have Rex [the realtor] take my name off this LOI and you will be the buyer."

Proof that defendant Johnson had the financial ability to pay what the Indictment alleges to be a proposed $350,000 bribe to a sitting Arizona Corporation Commissioner is clearly relevant to the Government's case. Such proof is corroborative of the UCC's expected testimony and probative that Pierce's enthusiastic solicitation was realistic.

Additionally, the United States will present evidence of the financial relationship that existed between defendant Johnson and defendant Norton both before and during the conspiracy period. Johnson had Norton's lobbying and public relations firm, R&R Partners, on retainer and paid the firm more than $155,000 between March 2011 and June 2013. Within that same time, from November 2011 to August 2012 defendant Johnson sent at least $6,000 per month to the UCC's consulting firm. Moreover, the Government will

present evidence that in November 2011 as a "thank you" to defendant Norton and the UCC, defendant Johnson hosted them on one of his two his private jets to an ASU football game in Los Angeles. In similar fashion, in June 2012 defendant Norton and the UCC flew on one of defendant Johnson's private jets to Napa Valley. Lastly, just after the ACC voted to allow recovery of personal income taxes by pass-through public service corporations such as Johnson Utilities, defendant Norton instructed the UCC to use the UCC's entity to invoice one of defendant Johnson's firms for $25,000 for work the UCC did not perform. Three days after the vote, defendant Johnson wrote a check for $25,000 to the UCC's firm.

To prove that defendant Johnson had the ability to pay $350,000 for Pierce's benefit, along with the other expenditures enumerated above, the United States will call Johnson's former bookkeeper, who is expected to testify that she regularly prepared a monthly $200,000 salary check for defendant Johnson. Additionally, evidence will reference the Johnson International and Johnson Utilities bank accounts.

### III.    NO UNDUE PREJUDICE

The United States has no interest in attempting to prove that defendant Johnson is wealthy for the sake of proving that defendant Johnson is wealthy. All of the above-cited evidence is relevant. Proving that defendant Johnson had the ability to meet the above-cited financial obligations is relevant, particularly the proposed $350,000 price tag on the real estate that defendant Gary Pierce craved.

The motion does nothing more than allege that the jury will be prejudiced against Johnson if he is shown to be wealthy. That supposition is baseless for two reasons. First, it is apparent that the trial jury will have good reason to conclude that defendant Johnson is wealthy without reference to the above-cited evidence. It will hear undisputed evidence that Johnson owned a major water utility[4] and that Chairman Gary Pierce and the ACC

---

[4] A "class A" utility, in the parlance of the ACC. According to Johnson Utilities' lawyer, it became a class A utility in about 2006 when it had 25,000 customers. R.T., In re; Johnson Utilities, ACC dkt. no. WS-02987A-08-0180, May 26, 2010 at 37.

granted Johnson Utilities more than an $18,000,000 increase in its wastewater division rate base.  Second, in the cited cases that discuss the impropriety of "class warfare" it is not evidence of wealth that prejudiced the defendants; it is the conduct of those presenting the evidence that caused the prejudice. The United States will not engage in such conduct.

## IV. CONCLUSION

Evidence of defendant Johnson's financial resources is relevant to the issues in this case. Additionally, the motion fails in its attempt to explain how defendant will be unduly prejudiced. For these reasons, the motion should be denied.

Respectfully submitted this 1st day of May, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

s/*Frank T. Galati*
FREDERICK A. BATTISTA
FRANK T. GALATI
Assistant United States Attorneys

# **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Patricia Ann Gitre, Esq.
*Attorney for defendant Gary Leonard Pierce*

Hannah Hatch Porter, Esq.
Jay Steven Volquardsen, Esq.
Woodrow Charles Thompson, Esq.
*Attorneys for defendant George Harry Johnson*

Ivan Kurian Mathew, Esq.
*Attorney for defendant James Franklin Norton*

Ashley D. Adams, Esq.
*Attorney for defendant Sherry Ann Pierce*

Daniel E. Fredenberg, Esq.
Christian C. M. Beams, Esq.
*Attorneys for Johnson Utilities, L.L.C.*

*s/Gaynell Smith*
U.S. Attorney's Office