ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
FREDERICK A. BATTISTA
Assistant U.S. Attorney
Maryland State Bar Member
Email: Fred.Battista@usdoj.gov
FRANK T. GALATI
Assistant U.S. Attorney
Arizona State Bar No. 003404
Email: Frank.Galati@usdoj.gov
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for the United States*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Gary Leonard Pierce, et al.,<br><br>　　　　　Defendants. | No. CR-17-00713-03-PHX-JJT (JZB)<br><br>**RESPONSE TO DEFENDANT GEORGE HARRY JOHNSON'S MOTION IN LIMINE NO. 1: SWING FIRST GOLF ALLEGATIONS; MOTION IN LIMINE NO. 3: INVESTIGATION OF JOHNSON UTILITIES BY OTHER STATE OR FEDERAL AGENCIES; MOTION IN LIMINE NO. 4: COMPLAINTS AND/OR REPUTATION RE QUALITY OF SERVICES PROVIDED BY JOHNSON UTILITIES, LLC. AND MOTION IN LIMINE NO 5: PROPOSED SALE OF JOHNSON UTILITIES LLC TO THE TOWN OF FLORENCE**<br><br>**[Docs. 138, 140, 143, 145]** |

The United States of America respectfully files this response in opposition to defendant George Harry Johnson's Motion in Limine No. 1: Swing First Golf Allegations; Motion in Limine No. 3: Investigation of Johnson Utilities by Other State or Federal Agencies; Motion in Limine No. 4: Complaints and/or Reputation Re Quality of Services Provided by Johnson Utilities, LLC, and Motion In Limine No. 5: Proposed Sale Of Johnson Utilities LLC to the Town of Florence. (Doc. Nos. 138, 140, 143, 145.)

I. **Background**

In defendant Johnson's Motion in Limine No. 1, defendant seeks to preclude any evidence, testimony or argument concerning allegations made by Swing First Golf. (Doc. 138 at 1.) In defendant Johnson's Motion in Limine No. 3, defendant seeks to preclude all evidence of his utility's notices of violation issued by other federal and state agencies, including but not limited to the Arizona Department of Environmental Quality (ADEQ), Environmental Protection Agency (EPA) and the Arizona Attorney General's Office. (Doc. 140 at 1.) In defendant Johnson's Motion in Limine No. 4, defendant seeks to preclude all evidence related to his utility's (1) quality of services provided; (2) quality of water provided, (3) reputation regarding water quality and services, and (4) customer complaints regarding water quality, quality of services, or billing or meter issues. (Doc. 143 at 1.) In defendant Johnson's Motion in Limine No. 5, defendant seeks to preclude any evidence, testimony, or argument concerning the proposed sale of Johnson Utilities, LLC, to the Town of Florence. Via four motions, defendant George Harry Johnson seeks to exclude the bulk of all negative information pertaining to his water utility, Johnson Utilities, LLC, which was contained in the record before the Arizona Corporation Commission (ACC) during the period of August 2011 through February 2013.

In its communications with counsel for defendant Johnson, the United States has continuously advised counsel that it would not offer any evidence or testimony related to related to the above referenced matters if it is not contained in the record of the ACC.[1] This being said, it is the position of the United States that some of the negative information contained and documented in the ACC record with respect to Johnson Utilities up to each time defendant Gary Pierce took official actions that benefitted defendant Johnson and his utility is relevant and admissible.

---

[1] The caveat being a defendant opening a door, e.g., by representing in some way that Johnson Utilities, LLC, had a stellar record with respect to the quality of its water, the quality of its service, the efficiency of its meters or billing process, the status of its recordkeeping, etc.

**II.     Discussion**

Under Fed. R. Evid. 401, "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  The determination of relevance is a two-step analysis, one being probative value and the other materiality. *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014); *United States v. Shomo*, 786 F.2d 981, 985 (10th Cir. 1986); *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981).  The standard is expansive.  "[E]vidence need not be conclusive in order to be relevant. An incremental effect.... is sufficient...." *United States v. Certified Environmental Services, Inc.*, 753 F.3d 72, 90 (2d Cir. 2014).  In fact, the proposition may remain improbable after the evidence and the evidence still be relevant. *United States v. Pollard*, 790 F. 2d 1309, 1312 (7th Cir. 1986), *overruled on other grounds*, *United States v. Sblendorio*, 830 F.2d 1382 (7th Cir. 1987).  It is a very low bar for evidence to be relevant "because the degree of materiality and probativity necessary for evidenced to be relevant is 'minimal' and must only provide a 'fact-finder with a basis for making some inference of chain of inferences." *United States v. Jordan*, 485 F.3d 1214, 1218(10th Cir.).  "Evidence does not have to be infallible to be probative. Probability of guilt is a function of all the evidence in a case..." *United States v. Herrera*, 704 F.3d 480, 486 (7th Cir.).

Fed. R. Evid. 404(b) does not apply to acts that are "inextricably intertwined" or intrinsic with the charged offense. *United States v. Parker*, 553 F.3d 1309 (10th Cir. 2009). Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined, when both acts are part of a single criminal episode, or when the other acts were necessary preliminaries to the crime charged. *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990); *United States v. Stovall*, 825 F.2d 817 (5th Cir. 1987); *United States v. Roylance*, 690 F.2d 164 (10th Cir. 1982); *United States v. Lenfesty*, 923 F.2d 1293, 1298 (8th Cir 1991). Also, evidence is intrinsic when exclusion would leave a, "chronological or conceptual void in the story of the crime..." *United States v. Ojomo*, 332 F.3d 485, 488-89 (7th Cir. 2003), and when the acts

complete the story of the crime on trial. *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002); or evidence that explains the circumstances of the case. *United States v. Holt*, 460 F.3d 934 (7th Cir. 2006).

- Swing First Golf Allegations

During the subject rate case, Swing First Golf was permitted to intervene prior to the first ACC decision in 2010. At the time, Swing First Golf, a customer of the utility, had a number of complaints with the utility. In ACC Decision No. 71854, docketed on August 25, 2010, which initially denied a significant aspect of the requested rate increase, the ACC addressed the issues raised by the intervener and the utility's responses. Swing First Golf's allegations permeated the rate making process, were responded to at length by the utility and were addressed at length in Decision No. 71854. (Attached Exhibit 1.) The prosecution agrees that it is not appropriate to go into the nature of the underlying allegations. However, since the allegations were before the ACC and considered by the Commissioners, they are inextricably intertwined with the Commission's Decision. Therefore, the matters related to Swing First Golf as set forth in Decision 71854 should not be precluded.

- Investigations by Other Agencies

At various times, the utility has been under investigation by the AZDEQ, EPA and/or State of Arizona Attorney General's Office. As part of the consideration of the original rate case, the utility's outstanding ADEQ Notices of Violation (NOV) were of concern to the ACC. Decision No. 71854 at p. 55. In the same Decision, in Findings of Fact Nos. 108-09, the utility was ordered to submit within 30 days a list of outstanding ADEQ NOVs, list the status of each one and identify the steps the utility was taking to come into compliance with ADEQ requirements. The utility was also required to notify the ACC when it was in full compliance. The facts in the record related to the NOV's are inextricably intertwined with the Commission's decision that was later reversed in ACC Decision No. 72579, docketed on September 15, 2011. Since other investigations were not addressed by the ACC in its two 2010 and 2011 decisions regarding the utility rate case or

its 2013 decision regarding the income tax pass through for certain entities, the prosecution will not make reference to other investigations.[2]

- Reputation of the Utility, Quality of Water and Service, Etc.

The United States agrees that in many circumstances evidence related to the utility's (1) quality of services provided; (2) quality of water provided, (3) reputation regarding water quality and services, and (4) customer complaints regarding water quality, quality of services, or billing or meter issues would be overly prejudicial.[3] However, reference to any of these subjects contained in Decision No. 71854 should not be precluded for the same reasons stated above.

One additional area where the United States believes relevance outweighs any potential prejudice is the actual concerns Commissioners who voted on either of the rate decisions in 2010 or 2011 had with the utility. For example, Former Commissioner Sandra Kennedy, who voted against the rate increase twice, advised the United States during an interview on April 25, 2017, that she believed that the utility was always in trouble with its ratepayers, its water was bad, its service was bad, it had a history of requesting things from the ACC but was never willing to prove to the ACC that it needed the things, it was a very poorly run company, it bullied its customers and had no qualms about it.

Additionally, Former Commissioner Kris Mayes, who also voted against the rate increase in 2010, advised the United States during an interview on August 17, 2017, that the utility was a "Problem Child." It was one of the more problematic utilities that the ACC dealt while she was on the Commission – one of the top three most problematic water utilities while she was on the ACC. What she remembered most about the utility were

---

[2] This position assumes the defendants do not open the door to addressing these other matters for example, by a contention that the utility generally operated in an impeccable manner.

[3] Again, this position assumes the defendants do not open the door to addressing these other matters for example, by a contention that the utility generally operated in an impeccable manner.

- 5 -

consumer complaints that dealt with the dumping of raw sewage.

The concerns of these two former Commissioners are examples of how the utility's history before the ACC played a role in the decisions and votes of the Commissioners. The preclusion of their perceptions of the reputation of the utility before the ACC would eliminate a significant amount of the context surrounding the actions of defendant Gary Pierce.

- Proposed Sale of the Utility to the City of Florence

A key issue in the rate case was the fact that the ACC staff was clearly unable to determine the value of the utility's plant and equipment due to the poor recordkeeping of the utility. In support of the staff's recommendations in 2010, the staff noted that a similar audit conducted by the City of Florence came to the same conclusion. This concern, as well as the utility's response to the concern, is contained in the ACC record leading up to the ACC's 2010 decision regarding a potential rate increase. ACC Docket No. WS-02987A-08-0180. Open Meeting Transcript, Dated May 26, 2010, pp. 33 and 38. Since these facts were before the ACC and considered by the Commissioners, they are inextricably intertwined with the Commission's September 11, 2011, decision.

Under Fed. R. Evid. 403, relevant evidence may be excluded if the probative value is outweighed by adverse considerations such as the danger of unfair prejudice, confusion, or waste of time. Because the law favors the admission of all relevant evidence, exclusion under Rule 403 "is 'an extraordinary remedy [that] should be used sparingly.'" *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014). Just because evidence is prejudicial is not a reason for exclusion as long as it is sufficiently probative. *United States v. McGuire*, 27 F.3d 457 (10th Cir.1994). The more probative the evidence, the more a court will tolerate prejudice. *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012), citing *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012); *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996); *United States v. Dwyer*, 539 F.2d 924 (2d Cir. 1976). Whether the evidence is unfairly prejudicial is a different question than whether the evidence is prejudicial. *United States v. Bailleaux*, 685 F.2d 1105, 1111 n.2 (9th Cir. 1982).

The fact that the evidence may tend to convict the defendant does not make it unfairly prejudicial. *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004).

There is no doubt that the subject information is somewhat prejudicial to defendant Johnson. However, the probative value outweighs its potential prejudice as all of this information was available to then Commissioner Pierce when he first voted against the rate increase, then voted for it and took all of the other official acts benefiting defendant Johnson. Defendants have been placed on notice of these acts via the United States' Response to defendants' Motion for a Bill of Particulars. (Doc. 130.)

### III. Conclusion

For the reasons set forth above, the defendant George Harry Johnson's overly broad Motion in Limine No. 1: Swing First Golf Allegations; Motion in Limine No. 3: Investigation of Johnson Utilities by Other State or Federal Agencies; and Motion in Limine No. 4: Complaints and/or Reputation Re Quality of Services Provided by Johnson Utilities, LLC., should be denied as detailed above.

Respectfully submitted this 1st day of May, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

s/Frederick A. Battista
FREDERICK A. BATTISTA
FRANK T. GALATI
Assistant United States Attorneys

# **CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Patricia Ann Gitre, Esq.
*Attorney for defendant Gary Leonard Pierce*

Hannah Hatch Porter, Esq.
Jay Steven Volquardsen, Esq.
Woodrow Charles Thompson, Esq.
*Attorneys for defendant George Harry Johnson*

Ivan Kurian Mathew, Esq.
*Attorney for defendant James Franklin Norton*

Ashley D. Adams, Esq.
*Attorney for defendant Sherry Ann Pierce*

s/Gaynell Smith
U.S. Attorney's Office