Patricia A. Gitre**,**
State Bar No: 011864
PATRICIA A. GITRE, P.L.C.
3655 W. Anthem Way Suite A-109
Anthem, AZ 85086
(602-320-0314
patgitre@patriciagitre.com
Attorney for Defendant Gary L. Pierce

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| United States of America, | CR 17-00713-PHX-JJT (JZB) |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANTS MOTION FOR EVIDENTIARY HEARING REGARDING THE CONDUCT OF JUROR 7** |
| Gary L. Pierce, et al, | |
| Defendants | |

Defendants by and through undersigned counsel, hereby move for an evidentiary hearing with respect to Juror No. 7 deliberating outside of the jury room and thereafter bringing her work product back to the jury room on July 10, 2018, in violation of Defendants' Fifth and Sixth Amendment rights.  This Motion is supported by the attached Memorandum of Points and Authorities and exhibits incorporated herein by this reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Facts.**

The presentation of evidence in this matter concluded on or about Friday, June 29, 2018, at 10:00 a.m.  (Dkt. 353.)  The jury began deliberations around 10:30 a.m., took a

break for lunch, and continued deliberations until 4:30 that afternoon. The jury deliberated for approximately five hours on the first day following the close of evidence. (Dkt. 353). At 4:30 pm, the Court then excused the jury until July 10, 2018, because of Fourth of July holiday week, and reported conflicts amongst various jurors. (Dkt. 353.) From June 30, 2018 through July 9, 2018 (10 days), the jury was not sequestered.

During this timeframe, press coverage of this case, both local and national, is ongoing and extensive to the point of abnormality.[1] Just this last Friday, July 13, 2018 the *Arizona Republic* published a front-page article about Johnson Utilities (hereinafter "JU") regarding JU's water quality issues, which mentions the criminal trial and the jury's deliberations.[2] All such coverage has the potential of tainting the deliberation process, and Defendants' Right to a Fair Trial. This ongoing negative publicity, the jury's deliberation schedule, and the additional information that at least one of the jurors may be

---

[1] *See for example* https://www.azcentral.com/story/news/local/arizona/2018/06/29/arizona-corporation-commission-johnson-utilities-bribery-trial-goes-jury/736788002/; https://azcapitoltimes.com/news/2018/06/29/arizona-ghost-lobby-gary-pierce-sherry-pierce-jim-norton-kelly-norton-george-johnson-trial-ends-with-defendants-claim-no-bribery/; https://apnews.com/9d0646ac2b06431c86152ebfaf830b3b.

[2] https://www.azcentral.com/story/money/business/energy/2018/07/12/johnson-utilities-needs-new-manager-judge-says/780207002/. Further, on the www.azcentral.com website, there is a video attached to this story wherein several *Arizona Republic* Reporters are discussing evidentiary issues about the trial and accuse defendants therein of committing additional election laws crimes. Many of the statements made in this piece misrepresent the evidence presented during the trial, as no one testified that Sherry Pierce was paid to collect $5 donations. One of the reporters actually contacted the Clean Elections Committee, who has, according to the piece, indicated that it may "look into" prosecuting Mrs. Pierce for violations of state law. Despite the careless misrepresentations of the facts and law by such reporters, all such information reduces Defendants chances of ever receiving a fair trial.

conducting her own research, or at the very least, creating her own work product, and sharing it with other jurors, affects the Defendants' Fifth and Sixth Amendment Constitutional rights.

### A. Juror 7 Question No. 1

The Jury resumed deliberations on Tuesday, July 10, 2018 at 9:05 am (Dkt. 354). At approximately 3:02 pm, counsel received an e- mail from the Court that the Court received a jury question. (See e-mail to the parties from Courtroom Deputy Martinez, dated July 10, 2018 attached as Exhibit 1). At 3:42 p.m. a second email was disseminated to counsel with the attached Jury Question and proposed response by the Court. Juror No. 7 posed the following question:

> **I am requesting clarification Re: Jury Instruction #11 that indicates each defendant stands alone when deciding guilty/not guilty. Jury Instruction 23 indicates if one commits a crime, the others have committed the crime. Do each of the defendants stand alone on all of the charges or are they intertwined?**

(*See* second e-mail from Courtroom Deputy Martinez dated July 10, 2018, attached as Exhibit 2 with attached juror question and court's proposed response).[3]

On July 10, 2018, after the parties convened *via* conference call that afternoon, and proposed various responses to the above question, the Court's Response was as follows:

> **Jury Instruction 11 correctly states that you must consider each charge as against each defendant separately. This applies to all charges and all defendants. If you find beyond a reasonable doubt that the conspiracy as charged, described in Jury Instruction 21, existed, and that a defendant was a**

---

[3] It is unknown by counsel precisely *when* the juror composed the above question, or what was discussed with the other jurors related thereto.

**member of that conspiracy, then apply Jury Instruction 23 to that defendant. Remember that all jury instructions are equally important, and you must consider all of them where they apply.**

However, the Court did not provide the above response to the jury until the next day, July 11, 2018 as it had already left for the day. The Court ordered counsel to be present in court on July 11, 2018 to discuss the jury's schedule. (Dkt.354).

### B.     The Jury Deliberation Schedule

On July 11, 2018 counsel appeared for the status conference. A few minutes prior to the hearing, Courtroom Deputy Martinez handed each counsel a handwritten calendar for July 2018, with juror conflicts on each day. Stapled to this calendar was a Juror Note from Juror 7.  See Exhibit 3.  At such conference, Judge Tuchi advised that he had, through his bailiff, Ms. Martinez, consulted with the jurors, regarding when the jurors would be available to deliberate, regardless of the already long break over the holiday week. Counsel was unaware of this communication or that it had occurred.  We submit there should be no communication with the jury without knowledge of the Parties' counsel. *See Tarango v. E.K. McDaniel,* 837 F. 3d 936 at 947 (9th Cir. 2016).

Based on various conflicts, the Court determined that the only days available for the jury to deliberate in the month of July are:  July 17, 18 (until 3:15), 23, and 24, 2018.

The jury recessed at 4:40 on July 11, 2018, for a period of five days, until Tuesday, July 17, 2018.  To date, the jury has met for deliberations on three separate days: June 29, 2018 approximately 5 hours (Dkt. 353). July 10, 2018 approximately 5 hours (Dkt. 354)

and July 11, 2018 approximately 5.5 hours (Dkt. 355). Over the next two weeks, only four days are available for jury deliberations.

### C. Juror 7 Question No. 2

Right before the 4:00 p.m. status conference, counsel was provided a copy of another note by Juror No. 7.   Juror 7 wrote:

> **This is not a question, it is a disclosure.  I wrote down information from the trial while at home.  I brought the notes to the jury on 7/10/18.  The purpose was to arrange my thoughts so I could present my views in a precise manner.  I did not research any outside information (with words crossed out thereafter.). I will provide the notes if requested.** [4]

(*See* Juror Question No. 2 attached as Exhibit 3.)

With little time to digest this note or legal issues that it raised, Defense counsel requested that the Court *voir dire* Juror #7, which was denied. The Court said it would think about Mr. Thompson's request that the Court copy Juror 7's notes and seal for the record. [5]  However, in the same breath, the Court found *sua sponte* that such notes represented only the juror's thoughts and did not warrant a further inquiry.  The Court declined to question Juror 7 as to impetus of such "disclosure," nor were her notes requested.  None of the other jurors were questioned as to how Juror No. 7's "notes" or outside work product was presented during their deliberations.

### II. Legal Argument

**A. If the possibility of prejudice to the deliberative process exists, it is incumbent upon the Court to conduct a further inquiry.**

---

[4] It is unclear what time this this note was written or when it was received by the Court.
[5] It is unknown if Juror 7 and/or remaining jurors have possession of her notes.

Well established Ninth Circuit law following *stare decisis* from our high court mandates, holds that upon learning of a possible incident of juror misconduct, it is incumbent a district court to hold an evidentiary hearing to determine the precise nature and character of the introduction of extraneous information that could taint the jury process. "It is axiomatic that fundamental to the administration of justice is a fair and impartial jury." *United States v. Bagnariol,* 665 F.2d 877, 884 (9th Cir.1981) (*citing Turner v. Louisiana, 379 U.S. 466, 472–73* (1965)). To protect the jury process and a defendant's Fifth and Sixth Amendment rights, the defendants are entitled to a new trial if the judge finds a "possibility that the extrinsic material could have affected the verdict." *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir. 1979). *Bagnario Id at* 885. The introduction of outside influences into the deliberative process of the jury is inimical to our system of justice. *Remmer v. United States,* 347 U.S. 227 (1954). The jury should reach its decisions only upon the evidence produced at trial, subject to judicial control and the rules of evidence, and unaffected by extrinsic facts and influences. *Bagnariol,* 665 F.2d at 884. "The trial court, upon learning of a possible incident of juror misconduct, must hold an evidentiary hearing to determine the precise nature of the extraneous information." *Id.* at 885.

In *United States. v. Madrid,* 842 F.2d 1090 (9th Cir.1988), the Ninth Circuit noted that a district court, upon finding a reasonable possibility of prejudice, needs to hold a fair hearing. *Id.* at 1094. The benchmark for a new trial when the jury obtains or uses evidence that has not been introduced during trial is if there is a reasonable possibility that

the extrinsic material "*could* have affected the verdict." *Dickson v. Sullivan,* 849 F.2d 403, 405 (9th Cir.1988); *United States v. Saya,* 247 F.3d 929, 937 (9th Cir. 2001).

There is no "bright line test for determining whether a defendant has suffered prejudice from an instance of juror misconduct." *Sassounian v. Roe,* 230 F.3d 1097, 1109 (9th Cir. 2000). Instead the Ninth Circuit has directed that a number of factors must be weighed to determine whether the jury's exposure to extraneous information necessitates a new trial. These factors include: (1) whether the material was actually received, and, if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jurors discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the material affected the verdict. *Dickson,* 849 F.2d at 406. "Because the ultimate question is whether it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict, no one of these factors is dispositive." *Id.* (internal quotation marks and citations omitted.).[6]

The extraneous information in this case also implicates other constitutional doctrines in addition to a criminal defendants' right to trial by an impartial jury—the right to be present during the proceedings, and the right to be represented by an attorney. *US.*

---

[6] There are recognized limitations to the Court's inquiry. "Jurors may testify regarding extraneous prejudicial information or improper outside influences. They may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts. *See United States v. Marques*, 600 F.2d 742, 747 (9th Cir. 1979), cert. denied, 444 U.S. 1019 (1980). *Bagnariol*, *Id* at 884–885.

*Const. amend. VI.* These constitutional rights are linked in this case because "the adversary process ceases to work effectively when neither the defendant nor his attorney is informed of an event that may significantly affect the ability of a member of the jury impartially to weigh the evidence presented to him." *Rushen v. Spain,* 104 S. Ct. 453, 466 (1983) (Marshall, J., dissenting).

In the most recent case on the issue, wherein the Ninth Circuit superseded and amended its previous order in the same case, the Court, in an opinion authored by our own Judge Murguia, went to great lengths to recognize the potentially damaging effects of external influences on a jury. *Tarango v. E.K. McDaniel*, 837 F. 3d 936, 947 (9th Cir. 2016).[" *Mattox* requires a trial court to examine possible prejudice when it is confronted with evidence of an external contact that has a "tendency" to be "injurious to the defendant." *Mattox*, 146 U.S. at 150, 13 S.Ct. 50"]. Thus, an external contact with a juror need only raise a credible risk of influencing the verdict to be deemed possibly prejudicial. Providing illustrations of external influences, the Court noted that federal law compels the trial court to "consider the prejudicial effect of *any* external conduct that has a tendency to influence the verdict, irrespective of whether it is about the matter pending before the jury." *Id.* at 945-946. The external contact need not be a direct communication to trigger an inquiry into possible prejudice. *Id.* at 946. While not every external contact requires a new trial, the Court noted, "[T]he Supreme Court has unequivocally and repeatedly held that due process requires a trial judge to endeavor to 'determine the effect' of occurrences tending to prejudice the jury when they happen. *Id.* at 947, *citing Smith v. Phillips*, 455 U.S. 209, 217 (1982). *United States. v. Caro-Quintero* (C.D. Cal. 1991) 769 F. Supp.

1564, 1569–1570, aff'd sub nom; *United States. v. Bernabe-Ramirez,* 42 F.3d 1403 (9th Cir. 1994).   The overriding principles of fairness require a hearing at this stage of deliberations to protect all Defendants' rights.

An evidentiary hearing serves two purposes. The first is to determine the truthfulness of the allegations of juror misconduct or prejudice. If the allegations are found to be true, the inquiry does not end there.  The court must determine if the bias or prejudice amounted to a deprivation of the Fifth Amendment (due process) or Sixth Amendment (impartial jury) guarantees.

**B. The Court must inquire as to the source of Juror 7's "note presentation" as well as the effect on the on the remaining Jurors.**

Here, we are met with the recent confession of Juror No. 7, who admitted to bringing extrinsic information into the jury room in violation of the jury instructions she was sworn to follow:[7]   Juror 7 is violating both the substance and the spirit of the jury

---

[7] ***Final Jury instruction No. 7(3)*** ("Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at trial.  A juror that creates a presentation outside of the jury for her other jurors violates the spirit of these jury instructions]; Final Jury instruction No. 18 *(*"Some of you have taken notes during the trial. Whether or not you took notes, you should  rely on your own  memory of what was said. Notes are only to assist you. You should not be overly influenced by your notes or those of your fellow jurors). ***Final Jury Instruction No 41***("Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. "….. The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

deliberation process and the Jury Instructions by creating a presentation outside of the jury room of her "notes" for her fellow jurors. It cannot continue.

While it is understandable that a juror may *think* about the evidence independently on their own time, our jurisprudence system is designed that all twelve jurors are required to deliberate together. Jurors cannot create independent presentations, a product of their own conclusions or independent deliberations, and thereafter share or present this information with other jurors to influence their individual and collective deliberations. This usurpation of the collaborative process taints the entire jury. As the court in *United States v. Howard*, 506 F.2d 865, 867 (5th Cir. 1975). explained:

> It is of course `the very stuff of the jury system' for the jury to exercise its collective wisdom and experience in dissecting the evidence properly before it; and in this process the cross-pollination of opinion, viewpoint, and insight into human affairs is one of the jury's strengths. But this does not include communication from one juror to another of objective extrinsic facts regarding the criminal defendant or his alleged crimes.

*United States v. McKinney*, 429 F.2d 1019, 1022-23 (5th Cir. 1970), cert. denied, 401 U.S. 922 (1970) (emphasis in original) explained:

> While the jury may leaven its deliberation with its wisdom and experience, in doing so it must not bring extra facts into the jury room. In every criminal case [courts] must endeavor to see that jurors do not consider in the confines of the jury room... specific facts about the specific defendant then on trial.... To the greatest extent possible all factual material must pass through the judicial sieve, where the fundamental guarantees of procedural law protect the rights of those accused of crime.

Further, the Court should not narrowly view such an intrusion that could erode the sanctity of our jury system. Instead, it should require a fair and broad inquiry to determine the potential prejudice and bias upon the entire jury. The need for the hearing is not

limited to the inquiry of only Juror No. 7's conduct, but rather to determine the impact upon the other jurors' deliberative process. The jury renders its verdict from evidence introduced during the trial, and the mere possibility other jurors have been affected by another juror's conduct, mandates a new trial to protect the constitutional rights of the defendants. Possible questions for voir dire of the entire jury include but are not limited to:

- What was the source of the notes?
- Did she take notes home that were taken during the trial?
- Did she take the jury instructions home with her?
- How extensive were her notes?
- Did they contain other material or information other than her thoughts?
- Were such notes typed, or hand written?
- When was the first question by Juror 7 composed?
- When was the second question by Juror 7 composed?
- When did the Court receive the note in relation to when it was composed?
- Were the notes discussed with the other members of the jury, if at all?
- Did other jurors see these notes?
- What caused Juror No. 7 to make the "disclosure?"
- Did any juror tell her to make the disclosure to the court? When?
- Has any juror been exposed to any media coverage about this case?

Juror No. 7 admitted to introducing documents from <u>outside</u> into the jury room. While Juror No. 7 may believe that her note presentation is harmless, it is the impact upon the remaining jurors that must be determined from Juror No. 7's admitted actions inconsistent with avoiding a compromised jury. In this case, the jury has deliberated for only 15 hours in nearly three weeks, returning home where we can only hope they would remain unaffected by the 24/7 media and social media coverage of this trial in both local, and national news. But wishful thinking that the jurors' deliberations *have not been infected* by Juror No. 7's confession of taking outside material into the jury room,

potentially compromising the sanctity of jury deliberations, does not comport with Ninth Circuit and nearly forty years of unbroken law flowing from the highest court in the land.

### III. Conclusion

The Defendants' freedom is at stake. They are entitled to a fair and impartial jury. Now, the jury is set to renew deliberations again on July 17, 2018 (from 8:30-3:15 pm), five days after their last day of deliberation. Will there be more extrinsic information brought into the jury room? This is the time for the court to inquire in light of all the circumstances –Juror 7's note presentation, political influences, ongoing heavy and influential media coverage, lengthy delay in the jury's ability to deliberate as a team of 12 persons, the government's use of this case as springboard to launch new cases (against the same defendants and others in pending investigations), and the severity of the charges.

The defendants respectfully request the Court hold an evidentiary hearing with all jurors prior to deliberation on Tuesday July 17, 2018.[8]

Respectfully submitted on 7/16/2018.

PATRICIA A. GITRE, P.L.C.

By: /s/ Patricia A. Gitre
Patricia A. Gitre
Attorneys for *Defendant Gary L. Pierce*

---

[8] The Court is aware of the government's "ongoing" investigations related to this matter. It has also been published in online social media and national news coverage, that *this* case is the "tip of the iceberg" with other cases pending. To ignore potential juror misconduct would improperly allow the prosecution to obtain the spoils to the detriment of these defendants.

MATHEW & ASSOCIATES

By: /s/ Ivan K. Mathew *(w/permission)*
    Ivan K. Mathew
    Attorneys for *Defendant James Norton*

GALLAGHER & KENNEDY, P.A.

By: /s/ Woody Thompson *(w/permission)*
    Woody Thompson
    Jay S. Volquardsen
    Hannah H. Porter
    Attorneys for *Defendant George H. Johnson*

ASHLEY D. ADAMS, P.L.C.

By: /s/ Ashley D. Adams *(w/permission)*
    Ashley D. Adams
    Attorneys for *Defendant Sherry A. Pierce*

CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2018, I electronically transmitted foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all following CM/ ECF registrants with an email copy to:

THE HONORABLE JOHN J. TUCHI
United States District Court
tuchi_chambers@usd.uscourts.gov
Julie_Martinez@usd.uscourts.gov

*s/ Pat Gitre*